Thank you, Your Honors. May it please the Court, my name is Robert Shepard, and I am representing the appellant in this case, Roberto Sanchez. This case is about error and prejudice that results from the jury's consideration of the defendant's immigration status. Can you turn the volume up just a little bit? The relevant facts here are, trial counsel failed to object to the state's line of questioning of a witness, Ms. Shavaria, in this case. Ms. Shavaria answered his questions regarding the defendant's immigration status, and we know, as evidenced by the jury's note to the court, they heard this information, they understood it, they remembered it, and they considered it. This Court should rule for Mr. Sanchez for two reasons. First, the jury note is dispositive. It is hard, concrete evidence that, and an insight into the jury's mindset that we don't normally have, that they considered this information, they thought about it, they regarding error. No reasonable, competent attorney would base any strategy on allowing his client to introduce something as prejudicial and inflammatory as his immigration status. And even if that decision had been made, no reasonable, competent attorney, no reasonable, competent attorney would allow the State to introduce that evidence first. Now, the State habeas court system determined jump to prejudice, and it would be hard to see how a single reference, not brought up again in closing, could affect guilt and innocence. Are you primarily focusing on the punishment side, or do you think you're just as strong as to both? We are primarily focusing on punishment. We recognize, obviously, that there is evidence of Mr. Sanchez's guilt, but and that the jury note came in, the jury asked the court about his immigration status during the sentencing phase. But we would contend that other facts on the record tend to show that this permeated the trial, especially the fact that this came in at guilt and innocence, which happened on that initial phase of the trial happened on April 10th, and that sentencing happened two days later. For me, on the punishment, I'm not as familiar with the Texas criminal system, but it's this bifurcated guilt-right-into-punishment system, and then we have, you'll know the article, that specifically deals with 404b, and it looks to me like it would allow a criminal history relating to illegal presence or illegal reentry, and then, sure enough, we've got a Texas case, that Infante decision, saying it does  no error at all as to punishment. No, Your Honor. That's not my understanding. That's fine. So for this to come in, it would have to be a bad act. That's under Article 3707, Section 3a. Yes. Under that, there has to be evidence introduced at trial that would satisfy beyond a reasonable doubt that some sort of bad act had occurred. Here, remaining in the country illegally is not a crime under Arizona v. United States. Instead, entry — Well, here being illegally present is a crime. It may be a misdemeanor, but it's a crime. I may be wrong. I thought it was. Your Honor, I do not believe it is, actually. I believe entry and reentry is a crime, but simply being here illegally is not a crime, as I said, under Arizona v. United States. As a result, we don't — no evidence was introduced on the record as to how Mr. Sanchez got here, under what circumstances he got here. And therefore, this information would still be inadmissible, even if it were introduced at the same time. That's inadmissible on a different theory than you've been pressing throughout. Right? That's a Borgialli claim, that you didn't have enough evidence to introduce the other act. Right? It isn't that this is not legitimate at all under Texas punishment. So — and that's why I focused you on the Infante case that seems to state a principle of law that's irrefutable. Your Honor, there are — there's other cases in Texas where this information still has to be relevant, as I do not believe Infante refutes the fact that the Court may still consider the prejudicial versus probative nature of that information, and that under that standard, it still has to be admissible. And here, there is no probative value considering the nature of the case. Okay. And that — What's the maximum penalty your client faced? Ninety-nine years imprisonment and a $10,000 fine. And he was sentenced to 70 years and a $10,000 fine. And the minimum sentence? Five years, sir. Okay. Going to my first point on prejudice, as I said, the jury note gives us an unusual, a unique insight into the mind of the jury. It speaks not only to what their deliberations were, but also their willingness to consider this information and the fact that they remembered it over two days later. Here, we know they heard it. The question was undeniable. Ms. Schiavaria responded, yes, Mr. Sanchez is here without papers. They understood what that meant. They understood that he came into this country from — he was from Honduras. He came into this country illegally. And as a result — as a result, they considered this information during his deliberations, during their deliberations. They remembered it, as I said, two days later. And we know from the jury note that the way that they phrased the question, the way that they thought about it, we know they considered this issue. And that, as a result — You say they considered it, but the question is just will he get deported after he gets released. That could suggest they're thinking, let's give him a short sentence because he's going home. We don't — there's not much to infer from that. I mean, couldn't have — jury could have thought, well, why should we pay to incarcerate this guy if he's going to go home after he gets out? That's correct, but here they gave him a 70-year sentence. If anything — I mean, sure, they could have given him a five-year sentence, and maybe they would have if — But you've got to show that the state courts were unreasonable in their determination. There isn't a Strickland violation. And so if we've got Texas law saying that illegal status is relevant at sentencing, and you've got a jury note that does show they're focusing on it, you're right, all the way from the guilt phase, it's just hard to infer that that's necessarily prejudicial. That's your argument, right? Yes. As I said, Your Honor, once again, it's prejudice when they've considered this and it's error that — that it was introduced because, as I've said, although — What does the attorney's affidavit say? He didn't want to object because he knew he was going to try to cross-examine the cousins who are also from Honduras. He wanted to give the implication that they're trying to cut a deal with the government? Or, no, he didn't object because what? He didn't object because he had — he stated that he intended for Mr. Sanchez to testify at trial and that, as a result, he was going to have Mr. Sanchez offer this evidence on his own to bolster his credibility with the jury. They — the state offered an explanation that, well, perhaps he would try to introduce this evidence regarding Ms. Chivarria and Ms. Manzanares to impeach their credibility, but Mr. Sepulveda never said that in his affidavit. Once again, here, the evidence of prejudice is clear in that it calls into question what the jury — the facts the jury decided this case on. It calls into question the facts the jury decided the sentence on. I have no confidence that the jury — or here, Mr. Sanchez has to show a reasonable possibility that the sentence or the — or the verdict would have been different, the outcome would have been different. Here, a reasonable possibility is something sufficient to undermine our confidence in the outcome. As I said, I have no confidence in this outcome, and I don't understand how, given the presence of the jury note, given these unusual circumstances, any reasonable jurist could. To my second point, Error, no reasonable, competent attorney would have premised any strategy on allowing this information in. It — it defies logic, and I'll first speak to allowing the state to introduce this evidence first. No — no reasonable, competent attorney would allow the state to bring this up if their stated strategy was to introduce this when their client was going to testify. It — it goes against proven trial strategy. You allow the state to introduce this on their terms. You allow them to frame the issue, and you then have to bring it up later. It still makes it look as though Mr. Sanchez was trying to hide something. By failing to object, it makes it — it implies it — I don't know if you've heard the stand-on direct that brought it up, who said, we're all from Honduras, we played there together. She wasn't the witness at the sentencing, correct? There was only one witness at the punishment phase, right? I — I believe you're correct. It wasn't the same woman, was it? No. And — No. And then at the punishment phase, there's no reference to it? No, there is no. I couldn't — I don't remember the record well enough. Was there closing argument? Is that how Texas works? You then get closing argument at the punishment phase again? Correct, yes. Okay. And was there any reference by the government to this illegal status then? No, but once again, I mean, the jury note negates — I mean, whether there was additional reference would go towards error. I mean, my point is simply, we measure each error as they occur. Sure, the cumulative effect of error may be inferred, may be implied that — to find a case of prejudice. But here, we don't need to do that because prejudice — the jury note kind of resolves some of those issues on prejudice. We have a lot more information than we would under your normal case, especially when the jury's note speaks directly to the alleged error. Going back to my point on error, it — it makes no sense to allow the State to introduce this because it signals to the jury that this is relevant information that they should consider. And we know that they did, in fact, consider it. But beyond that, there is no wisdom, there is no strategy in allowing — in allowing your client to testify about his immigration status given the wealth of knowledge that States from numerous courts in Texas and across the country that says that this is an inflammatory issue, that it's so prejudicial that even a single mention might not be able to unring the bell, that actually the best solution would be to move for mistrial. And here, that's exactly what counsel should have done. Counsel here tried as hard as he could to get the defendant to testify, didn't he? Yes, Your Honor. I understand that he spoke to the — Would it have been error if, on cross-examination, the defendant had been asked, are you in the country illegal? Would it have been error if counsel had not objected to that? Yes, Your Honor, because the State should not have been able to ask him that. I mean, they — like I said, they can't — But it would be much more reasonable, wouldn't it, for the counsel to let that go because  Well, presumably, under trial counsel's strategy, the information likely would have already been introduced, or rather, sorry, once again, what trial counsel said in his affidavit. I contend it's not strategy. But under what trial counsel said, it would have already been introduced. So I'm uncertain how this circumstance described would have happened based on what we know that Mr. Sepulveda said in his affidavit. Last — once again, this is as prejudicial as — this sort of information is as prejudicial and inflammatory as any. And here, at the very least, counsel should have sought an admonishment. Based on the jury's note as well, that actually might have solved the problem. They didn't know how to consider this. They were thinking about how to consider it. And if they had been told, no, we can't consider it, you can't consider it, don't think about it, think about, you know, just the facts of this case, that may have — that may have solved the issue. If the Court has no further questions, I'll reserve my remaining time for rebuttal. Mr. Shepherd. Ms. Hacker. May it please the Court, Heather Hacker for the State. According to multiple eyewitnesses, including his own family members, Roberto Sanchez chased an unarmed man 75 yards across a parking lot and stabbed him in the heart with a switchblade. Afterward, he told his cousins that it felt good to kill someone. That's what the evidence during trial showed. During the trial, there was one mention of the fact that Sanchez is an illegal immigrant and his attorney decided not to object to that one mention for strategic reasons. The State Court found that this was reasonable trial strategy and that, in any event, it resulted in no prejudice to Sanchez. The question in this case is not whether that determination was incorrect. It's whether it was unreasonable or so wrong that there's no room for fair-minded disagreement. Sanchez cannot meet that standard, so the Court should affirm. Turning to the first prong of the Strickland test, deficient performance. This Court engages in a doubly deferential review of trial counsel's performance under AEDPA in Strickland. Strickland review of trial counsel's performance is itself deferential, and the point is not to second-guess trial counsel's strategy. Importantly, this is not a case where trial counsel mistakenly thought he could object. He thought he could have, but chose not to for strategic reasons. And a conscious and informed decision on trial strategy cannot be the basis for an IATC claim unless it's so ill-chosen that it permeates the entire trial with obvious unfairness. That's something that Sanchez cannot show here. Even if that testimony were inadmissible, that does not mean that it's per se ineffective assistance to choose not to object. That seems to be what Mr. Sanchez is arguing here. If we divide this up into guilt, innocence, and punishment, right now you're talking about guilt, innocence? You're on the first prong, deficiency. Yes. As to that, it is a single reference. It doesn't come up again. But am I right that the Texas Direct Appeal Court was very, very critical of the introduction of this evidence? Do you remember they said it's forfeited, but they said we do not contone in any way the State's decision to introduce Sanchez's illegal status during the guilt, innocence phase? That's correct, Your Honor. So that sounds to me like even Texas, the court system, was acknowledging this was improper at the guilt, innocence phase? Yes, Your Honor. I think that's an accurate representation of the appellate court's comment on that. I believe it was in a footnote. Okay. So then the argument is it was improper to not object. It was attorney deficiency unless there's a strategic reason? Yes, Your Honor. Okay. And he only gave one reason. He didn't give the reason that seems quite compelling that you put in the brief, that, oh, well, I've got to watch out for the cousins. His reason was I thought he was going to testify, so I wanted him to take the sting. Is that right? He did say that in his affidavit. In his affidavit, he did mention the fact that his overall strategy was to impeach the cousins' testimony, which is — It's not as compelling as the reason you gave. I really understood your reason, but I didn't understand his reason. But you think either survives Strickland deferential review? Yes, Your Honor. And under Richter, the court — this is an objective inquiry. The court can look at the trial record, and it doesn't matter that he didn't say that specifically in his affidavit. It's obvious from reading the trial transcript that that's what he was trying to do. I mean, he didn't really have much else to go on. That was his only hope, I mean, to try to discredit this very compelling testimony, and so that's what he did. He focused his closing argument on that. So even if he didn't explain that in his affidavit as fully, it's obvious from the trial transcript that that's what he was trying to do. And the court also — again, under Richter, the court should be looking at all the possible reasons that he had to do what he did. It's not limited to just his affidavit. And again, like you mentioned, that is a very compelling reason as to why he chose not to, especially when you consider the context of the statement. But then jump — I mean, just jump into punishment. If that argument doesn't exist then, why in the world wouldn't he want to have the jury told, you can't consider this, that he's Honduran, and give him 70 years because he's not even American? I believe that the claim that's being made on habeas, Your Honor, is whether or not it was ineffective assistance for him to have not objected to that one mention. I don't believe that his petition could be construed as making a challenge to the fact that he didn't ask for a jury instruction or a limiting instruction. But the government elicits it in guilt and innocence. Then the government says all the evidence from guilt and innocence is relevant to punishment, right? And he doesn't object at that point. I guess not.  Well, their argument is we know the jury was all focused on his Honduran status because they asked a question about it. So they clearly — I mean, I really thought they were making a Strickland argument as to punishment. That's the more compelling argument, probably. I mean, if you'd like to talk about punishment, we can switch there. And, you know, the focus of his argument, Mr. Sanchez's argument, is on this jury note. But the jury note is really a red herring here, because as Your Honor's pointed out during my friend's argument, it doesn't — it shows at most that the jury was considering the information. It was considering what would happen if this person was released to the street. But they do focus on his Honduran alienage. They mention the fact that he would be going back to Honduras. So at most it shows that they were considering what the effect would be if he was released. That's not the same thing as evidence of prejudice. And as Your Honor's pointed out, it's very reasonable to assume that if they thought that he would be deported when he was released, that could have led them to give him a shorter sentence. They didn't have that information because the judge didn't answer the question. So what they did was they gave him the sentence that they probably would have given somebody who for deportation was not a consideration. They gave him a long sentence. And you can't show prejudice with that jury note because the sentence that the jury gave was 100 percent in line with the evidence that was presented during the trial. The prosecutor during her closing argument, she got up there and she said, okay, the range is 5 to 99 years. Start at the middle, 45 to 50. Then you look at the mitigating evidence, which would cause you to go onto the lower end of the range, and you look at the aggravating evidence that would cause you to go into the higher end of the range. There's no mitigating evidence. And there wasn't. So then she goes through and recounts all of the aggravating evidence, the fact that Mr. Sanchez affirmatively chased this man 75 yards across a parking lot, this unarmed man, and stabbed him in the heart, then says he enjoyed it afterward. Those are very aggravating facts. And the fact that — and so she also urged them to, because of that, to go into the higher end of the range. She also urged them to consider the effect that the crime had on the victim's family. It's obvious that the jury was concerned about — and excuse me, she also mentioned, you know, they should think about what happens if this person is released on the street when deciding whether to go into the high end of the range or not. And the jury's — Would a Texas prosecutor be able to say to the jury, you heard he's illegally here, and that's a reason you can punish him more? Is that — I was trying to figure out what Texas law is on that. I'm not sure if there is any settled law on that point. Well, how do you interpret this Article 37? So Article 37 allows the introduction of extraneous offenses during the punishment phase. So I believe that there are some standards that you have to meet in order to be able to introduce that evidence. So if those standards were met, then under Article 37 — The witness has already said he's illegally here. Would Texas — would you be able to argue this is an aggravator, he's an illegal alien, that's part of his background? I just was curious. That's what I thought Infante said. It seems to suggest that, Your Honor. You're hesitant, though. I mean, I'm also considering what the appellate court said here, that they thought that the mention of it was improper, but that could have also been because that was during the guilt-innocence phase. So, you know, the fact that we're debating here as to what the Texas courts would consider shows that he can't meet the standard under EDPA, that the State court's determination here in this case was unreasonable. Going back to my point about what the jury was thinking here in the jury note, the point that — so the jury was obviously considering what the effect would be if he was released. They had the first note where they asked how old he was, the second note where they asked about deportation, and then the third note where they asked about whether the fine would go to the victim's family. That's completely in line with the way that the prosecutor argued in her closing and how they should assess punishment. So what that shows, that plus the extreme aggravating evidence in this case shows that what the jury did was completely in line with what you would expect them to do. There's no evidence that the brief introduction of the illegal status of the defendant had any impact whatsoever on the harshness of the sentence that he was given. Unless there's any further questions on that point, I'll wrap up. Mr. Sanchez cannot show prejudice given the overwhelming evidence and facts of the crime, and he can't overcome the doubly deferential review required by Strickland and EPA to show that the State court's determination here was unreasonable. This Court should affirm. And if there are no further questions, I'll yield the remainder of my time. Thank you, counsel. Butler? Your Honor, to address some of the State's points, the State cites Richter for the reasons for why trial counsel would have taken certain actions other than what's stated in his affidavit. Richter and Walker do stand for a proposition that the Court must actively consider what the reasons were supporting any sort of claim of strategy. But that does not mean that this Court should consider reasons given untethered from the facts or unrelated to what trial counsel said. I direct this Court to Wiggins v. Smith, and this Court's Richards v. Quarterman, where they both say that arguments completely untethered from any sort of logic, post hoc rationalizations, the Court's not required to consider. And Mr. Sanchez is arguing that's exactly what Mr. Sepulveda's reason was here and the additional arguments that the State made. To address the Court's question regarding Honduran status, yes, although the thrust of that comment was relating to immigration status, obviously the jury was aware of his nationality, referenced his nationality, and Mr. Sanchez, as he stated in his briefs, that is another reason for considering both the error and prejudice from. The Court or the State wants to argue that the evidence is overwhelming here. Mr. Sanchez admits there's evidence on the record of guilt, but that there are mitigating circumstances as well, such as the fact that he and Ms. Shavaria were leaving that evening. They were not the instigator of this. Mr. Gonzales attempted to break the window to get in to see or to get in to get access to Ms. Shavaria, that it's unclear how a physical altercation began, and that there's conflicting testimony on the record. Under those circumstances, certainly a jury could consider these as mitigating factors in determining a sentence. And last, regarding Article 37, the standard is that evidence has to be introduced that proves a bad act beyond a reasonable doubt in order to use it. As I said during my opening, that did not happen here. There is no evidence on the record regarding how Mr. Sanchez got here, regarding any other circumstances. There's only a single reference by Ms. Shavaria to the fact that he was here illegally, and as a result, this would not be admissible during sentencing. To wrap up, once again, this is such an unusual circumstance, such a rare case to have a jury note that speaks to the alleged error. That's exactly what we have here. If you can't show prejudice under these circumstances with this sort of direct evidence, then virtually nothing is sufficient to prove prejudice. And last, no reasonable, competent attorney would allow this evidence in and would allow the State to introduce it. There's no strategy behind it. It makes no sense, and it doesn't further the stated reason that trial counsel allowed it in. If there's no further questions from the Court, Mr. Sanchez requests this Court vacate his conviction and remand for retrial, or in the alternative, vacate his sentence and remand for resentencing. Thank you. Thank you very much. Mr. Shepard, you are pro bono and appointed? Yes, sir. Thank you for doing that. And Ms. Hacker, thank you for your public service. Thank you. We will call the next case, 17-602-36, Flores-Ibarca v. Barr.